No. 15-10870

**IN THE**


**UNITED STATES COURT OF APPEALS**

**FOR THE**

**ELEVENTH CIRCUIT**

**ANDREA SILVERTHORNE**

*Plaintiff/Appellant*

**V.**


**YEAMAN ET AL**

*Defendants/Appellees*


On Appeal from the United States

District Court for the Southern District of Florida

**AMENDED INITIAL BRIEF OF THE APPELLANT**


Andrea Silverthorne

PO BOX 214

Lubec, Maine, 04652

207- 412 8787

andthorne@aol.com

*Pro se*

**APPEAL NUMBER 15-10870-DD**

Silverthorne v Yeaman et al

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT**

Appellant, Andrea Silverthorne pursuant to 11 Cir. R. 26.1-1 certifies that the following

persons and entities have an interest in the outcome of this case's appeal:

Becker & Poliakoff, P.A., Counsel for Appellee

Blue Sky Miami, Inc., Appellee

Business Law Group. P.A., Appellee

Stephen M.  Davis, Counsel for Appellee

Scott Chapman Davis, Counsel for Appellee

David Desorbo, Appellee

Daniel DiNicola, Appellee

Aaron Lee Gordon, Counsel for Appellee

Lincoln Place Residences Condominium, Association, Inc., Appellee

i

**APPEAL NUMBER 15-10870-DD**

Silverthorne v Yeaman et al

Hon. Chris M. McAliley, U.S. Magistrate Judge for the Southern District of Florida

Hon. Jose E. Martinez, U.S District Judge for the Southern District of Florida, Maxwell

Scheiner, Appellee

Andrea Silverthorne, Appellant

LM Funding, LLC, Appellee

Aaron Swimmer, Counsel for Appellee

Swimmer Law Associates, P.A., Counsel for Appellee

Allan Yeaman, Appellee

None of the Corporations listed have public, corporate ownership of their stock in excess of 10 percent.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant is *Pro se* and will elect to not to burden the court with what could only be a trial and error experiment.    Written submissions will prove sufficient for reversing the district court's judgment in dismissing the complaint for failure to meet Rule 8 guidelines and for ruling on the ancillary procedural issues that arose along the way to its dismissal. If request by the Appellee's  counsel she reserves the right to be present.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ………………………………..i

STATEMENT REGARDING ORAL ARGUMENT ……………………….....ii

TABLE OF AUTHORITIES ………………………………………………….vi

STATEMENT OF JURISDICTION …..……………………………………….1

STATEMENT OF THE ISSUES ………………………………………….....1

NATURE OF THE CASE ………………………………………………………3

STATEMENT OF THE FACTS AND CASE ………………………………...6

STANDARD OF REVIEW …………………………………………… 29

SUMMARY OF THE ARGUMENT …………………………………… 30

ARGUMENT ………………………………………………………….32

1. THE DISTRICT COURT IMPROPERLY HELD THE COMPLAINT VIOLATED RULE 8 (A) (2) BECAUSE: ………………………………………32

    The wrong standard of review was used. ……………………………..32

B. The district court failed to evaluate and reconcile the TAC on the basis of rule 9(b). …………………………………………………….......36

.   Prima facie evidence there was not a *de novo* review exists in the fact neither the magistrate nor the court specifically mentioned the later incorporated exhibits to the pleading. ……………………………………………….......39

2. WHETHER THE COURT VIOLATED SILVERTHORNE'S SUBSTANTIVE RIGHTS TO DUE PROCESS UNDER THE FIFTH AMENDMENT AND THEREFORE, ACCESS TO THE COURT UNDER THE FIRST AMENDMENT, AND A JURY TRIAL UNDER THE SEVENTH AMENDMENT.
………………………………………………………………… 39

    The manner in which the district court used Fed R. of Pro. 8(a) (2) in this case, for other than its purpose, and the removal of amendment rights before ruling on a motion for reconsideration of a dismissal without prejudice, violated the substantive rights of this plaintiff and therefore the *Rules Enabling Act*,
28 U. S. C. § 2072. ……………………………………………… 39

B.    It failed to render a full written opinion on the application of all pleading rules and their impact on the TAC's counts in accordance with its responsibilities under Eleventh Circuit case precedent and the *Judiciary Act of 1789*, Section 19. ...............................................................................44


C.    WHETHER IT WAS AN ABUSE OF DISCRETION TO: ...............  47

Deny as moot the opposition motion to the magistrate's denial of motions to recluse Becker Poliakoff and hear the declaratory judgment for rights under an international treaty, or, alternatively, whether the magistrate's orders should be stricken because they were ruled on outright without an R&R format or notice that opposition was allowed, and a dismissal as moot is not a *de novo* review. ...............   47

Deny a non- existent request to amend and not vacate it, thereby affecting a dismissal with prejudice without due process. .................................. 49

C.    Dismiss the collection laws statutes against LPR and its Board of Directors with prejudice before discovery........................................................ 50

CONCLUSION AND RELIEF SOUGHT ......................................... 53

CERTIFICATE OF FONT COMPLIANCE

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

CASES

*Adams v. Heckler,*
794 F.2d 303, 307,
(7th Cir.1986); ................................................................. 48

*Amer Dental Ass'n v Cigna Corp.,*
605 F.3d 1283,
(11th Cir. 2010); ................................................................. 37

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,*
77 F.3d 364, 366,
(11th Cir. 1996); ................................................................. 36, 44

*Associated Industries Insurance Company, Inc., v. Advanced Management Service,*
SD Florida, 2013,
Case no: 12 cv 80393); ................................................................. 36
43

*Banner Construction Corporation v. Arnold,*
128 So. 2d 893,
(1st DCA. 1961); ................................................................. 37

*Bell Atlantic Corp. v. Twombly,*
550 U.S.127 1955, 167 L.Ed.2d 929
(2007); ................................................................. 25, 30, 33, 34, 35

*Betty K Agencies, Ltd. v. M/V MONADA,*
432 F.3d 1333, 1337.
(11th Cir. 2005); ................................................................. 29, 46

*Bourff v. Rubin Lubin, LLC,*

674 F 3d 1238,

(11th Cir. 2012); ……………………………………………………….. 52

*Boyd v. United States,*

116 U. S. 616,

(1886); …………………………………………………………..……… 43

*Bridge v Ocwen Federal Bank,*

681 F 3d 355,

(6th Cir. 2012); ……………………………………………………… 12

*Chaparro v. Carnival Corp.,*

693 F. 3d 1333,

(11th Circuit, 2012); …………………………………………..… 38

*Cinotto v. Delta Air Lines Inc.,*

674 F.3d 1285, 1291,

(11th Cir. 2012); …………………………………………………….. 30

*Conley v. Gibson,*

355 U.S. 41, 47, 78, 99, 2 L.Ed.2d 80,

(1957); …………………………………………………………….... 33, 35

*Douglass v. United States Auto Ass'n,*

79 F 3d 1415,

(5th Cir 1996); …………………………………………………… 12

*Ebrahimi v. City of Huntsville Bd., Educ.*

114 F.3d 162, 165,

(11th Cir.1997); ……………………………………………………... 44

*Erickson v. Pardus,*

127 U.S.  2197,

(2007); ………………………………………………… 25, 33, 34, 41

*Estele v Gamble,*

429 US 97,

1976; .................................................................................... 34

*Fikes v. City of Daphne,*

79 F. 3d 1079,

(11th Cir.1996); .................................................................... 44

*Forman v Davis,*

371 U.S. 178,

(1962); .................................................................................. 42

*Friedlander v. Nims,*

755 F. 2d 810,

 (11th Cir. 1985); ................................................................. 39

*General Trading v. Yale Materials Handling Corp.,*

119 F. 3d 1485,

(11th Cir. 1997); ................................................................. 37_

*Hall v. Sharpe,*

812 F.2d 644,

(11th Cir.1987); .................................................................. 48

*Hanna v. Plumer,*

380 U.S. 460,

(1965); ............................................................................... 41

*Hopper v. Solvay Pharm, Inc.,*

588 F 3d 1318,

(11 Cir. 2009); .................................................................... 37

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,*

162 F. 3d 1290,

(11th Cir. 1998); ............................................................ 37, 44

*Jones v. Pillow,*
  47 F. 3d 251,
  (8th Cir. 1995); ................................................................ 39

*Lahtinen v. LIBERTY INTERNATIONAL FINANCIAL SERVICES, INC.,*
  No: 13-cv 61766),
  (SD Florida, 2014); .......................................................... 41

*Mamani v. Berzain,*
  654 F.3d 1148,
  (11th Cir. 2011); ............................................................. 37

*Marbury v Madison,*
  5 U.S. 137
  (1803); ......................................................................... 45

*McKinney v. Pate,*
  20 F.3d 1550,
  (11th Cir.1994); .............................................................. 54

*Neitzke v. Williams,*
  490 U.S. 319,
  (1989); ......................................................................... 33

*Rembert v. Apfel,*
  213 F. 3d 1331,
  (11th Cir. 2000); ............................................................. 49

*Scheuer v. Rhodes*
  416 U.S. 232,
  (1974); ......................................................................... 33

*Sibbach v. Wilson & Co.,*
  312 U.S. 1,
  (1941); ..................................................................... 40, 41

*Swierkiewicz v. Sorema N. A.,*

534 U.S. 506,

2002; ................................................................................... 33

*Teng v Metropolitan Retail Recovery Inc.,*

851 F. Supp. 61,

(Dist. Court, ED New York 1994); ........................................ 12

*Xaphes v. Shearson, Hayden, Stone, Inc.,*

508 F. Supp. 882, 887

(S.D. Fla. 1981); ................................................................... 39

*Zuckerman v. Franz,*

573 F. Supp. 351,

(S.D.Fla.1983); ..................................................................... 38

*Ziemba v. Cascade Int'l Inc.,*

256 F. 3d 1194, 1202

(11th Cir. 2001); ................................................................... 37


U.S. CONSTITUTION

First Amendment ....................................................... 1, 5, 21

Fifth Amendment.......................................................... 1, 5, 21

Fourth Amendment .......................................................... 1, 5

Seventh Amendment...................................................... 1, 5, 21

Ninth Amendment............................................................. 1, 5

Fourteenth Amendment .................................................... 1, 5

x

## STATUTES

42 U. S. C. § 1983, ..................................................................... 1

18 U.S.C. §§ 1961-1968, ......................................................... 1, 14, 36, 37

18 U.S.C. § 1341, .................................................................. 1, 14

15 U.S.C. §§ 41-58, ......................................................................14

15 U.S.C § 1692, ................................................................ 1, 5, 9

15. U.S.C. § 1692 j (a), ........................................................... 52

28 U.S. C. § 2201, ...................................................................1, 16

28 U.S.C §1291,.................................................................... 1

28 U.S.C. § 1331, ......................................................................1

28, U.S.C. § 2072 , ................................................ 2 30, 34 39, 40, 41, 44, 46

28 U.S. C. § 636 (b) (1),  ........................................................... 6, 48

28 U.S. C § 636 (c) (1), ............................................................ 7, 47

28 U.S.C. §§§§§§  3, 13, 15, 21, 47, 57, ......................................... 30

*Judiciary Act 1789,* Section 19, ......................................... 2, 46

## FLORIDA STATUTES

§ 718, ...................................................................... 3, 50

§ 559.55, ................................................................ 5,  9

§ 559.72 (9); .......................................................................52

## FEDERAL RULES OF CIVIL PROCEDURE

8 (a) (2),....................................2, 4, 6, 10, 11, 25, 31, 32, 33, 40, 42, 43, 44, 46

8 (d), ......................................................................... 41

9(b), ...................................... 1, 25, 29, 31, 36, 37, 38, 39, 42, 43, 44, 46

12 (b) (6) ..............................................31, 37, 42, 43, 44, 46

LOCAL RULES OF APPELLATE PROCEDURE

47 ................................................................................................. 30

Other authorities

DHSC, 4:76, Stat 1:83 Marcus, Maeva, edt; *The Documentary History of the Supreme Court of the United States;*

 *1789-1800.*Pub Columbia University Press; 2007, ..................................... 47

S. Rep. No 95-382,95thg Cong. Ist Sess. 5(1977),

U.S.Code Cong. & Admin News, 1977 pp1695,1699; ...................................52

## JURISDICTIONAL STATEMENT

The case arose under the Fourth, Ninth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U. S. C. § 1983, 18 U.S.C. §§ 1961-1968, 18 U.S.C. § 1341, 15 U.S.C § 1692, 28 U. S. C. § 2201, and Florida constitutional and common law statutes. The district court had jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  Appellant appeals from a final decision of a district court, and therefore this Court has jurisdiction under 28 U.S.C §1291. The appeal was timely filed on February 27, 2015. The court denied the reconsideration motion on January 28, 2015.

## STATEMENT OF ISSUES

1. THE DISTRICT COURT IMPROPERLY HELD THE COMPLAINT VIOLATED RULE 8 (A) (2) BECAUSE:

A. The wrong standard of review was used.

B. The district court failed to evaluate and reconcile the TAC on the basis of rule 9(b).

C. Prima facie evidence there was not a *de novo* review exists in the fact neither the magistrate nor the court specifically mentioned the later incorporated exhibits to the pleading.

2. WHETHER THE COURT VIOLATED THE APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE FIFTH AMENDMENT AND THEREFORE, ACCESS TO THE COURT UNDER THE FIRST AMENDMENT AND A JURY TRIAL UNDER THE SEVENTH AMENDMENT BECAUSE:

1

A. The manner in which the district court used Fed R. of Pro. 8(a)
(2) in this case, for other than its purpose, and the removal of
amendment rights before ruling on a motion for reconsideration
of a dismissal without prejudice, violated the substantive rights
of this plaintiff and therefore the *Rules Enabling Act*, 28 U. S.
C. § 2072.

B. It failed to render a full written opinion on the application of all
pleading rules and their impact on the TAC's counts in
accordance with its responsibilities under Eleventh Circuit case
precedent and the *Judiciary Act of 1789*, Section 19.

3. WHETHER IT WAS AN ABUSE OF DISCRETION TO:

A. Deny as moot the opposition motion to the magistrate's denial of
motions to recluse Becker Poliakoff and hear the declaratory judgment
for rights under an international treaty, or, alternatively, whether the
magistrate's orders should be stricken because they were ruled on
outright without an R&R format or notice that opposition was allowed
and a dismissal as moot is not a *de novo* review.

B. Deny a non- existent request to amend and not vacate it thereby affecting
a dismissal with prejudice without due process.

C. Dismiss the collection laws statutes against LPR and its Board of
Directors with prejudice before discovery

2

## NATURE OF THE CASE

In January 2012, this Appellant, Andrea Silverthorne, "SILVERTHORNE,"walked up to the imposing glass walls of a federal court house to right a sizable wrong that had a sizable impact on her life, unrepresented by a licensed attorney.   The wrong impacted many people throughout the state of Florida.  SILVERTHORNE is one of many victims, differing from them only because she was a longtime Realtor. She had had the benefit of specialized knowledge from professional training and legal advice on the power of an association's governing documents, as it would turn out, from the future opposing counsel in this case, Becker Poliakoff's Steven Davis.

On July 1, 2010, during the height of the foreclosure crisis, the state of Florida passed an amendment to Fla Stat. 718, ostensibly to help condominium associations collect debt from unit owners in arrears.  On that day, the new Florida law applied to no established condominium in the state. Associations' governing contracts could not be impaired unless a vote of the membership elected to embrace the law.

The subject of this appeal, SILVERTHORNE's TAC, tells one story of the mass impairment of the state of Florida's condominium dweller's contracts by their Boards of Directors and their representing attorneys, beginning days after the State passed the law.

3

Lincoln Place Residences Condominium Association ("LPR"), and its Board of Directors, David Desorbo ("DESORBO"), Allan Yeaman ("YEAMAN"), and Daniel Dinicola("DINICOLA"), Blue Sky Miami Management ("BSM"),and its owner Maxwell Scheiner("SCHEINER"), LM Funding LLC("LMF"), and Business Law Group ("BLG"), collectively ("Defendants"), knowingly conspired– in concert– to file a lien without notice, and then deceptively and directly pursue SILVERTHORNE's tenant for his rent without amending the condominium's documents, using the shield of the inapplicable new law and a false portrayal of a debt to convence the tenant: Florida law said he had to pay his rent to LPR. SILVERTHORNE owed it no debt.

The Defendants went beyond use of an inapplicable law to commandeer her property with threaten electronic lock out from the building, first for her tenant and then for her. The tenant fled.

LPR refused to allow the apartment to be further rented, despite the fact SILVERTHORNE offered to allow them to keep the proceeds of the lease, deduct the maintenance and escrow the balance until the dispute was settled, thereby denying the association itself revenue, because without the rental income she could not afford to pay the maintenance. She was retired, sixty-six years of age, and attending university. LPR would only allow rental if SILVERTHORNE admitted to the debt. They deprived the unit of more than $100,000.00 in income until last

4

winter when she reoccupied it, after graduating from four years in university [DE 75, pg. 1-28].

The case is premised on abuses of the Federal Debt Collection Practices Act, 15 U.S.C § 1692 and the Florida Consumer Collection Practices Act, Fla. Stat.§ 559.55, which are alleged to go beyond their infringements to:

- violation of her Fourth Amendment rights for the wrongful seizure of her benefit from her real property and commandeering access to the unit;
- the Ninth Amendment for invasion of her privacy by posting an open face debt collection letter on her tenant's door for all to see, copying him on email correspondence concerning the false debt, and publishing a false debtor's list on LPR's member web site without noting the dispute– and;
- the Fourteenth Amendment for taking her property while functioning as a surrogate state actor, under color of law, by filing a lien without notice and seizing her rent and access to her property while falsely claiming Appellant owed LPR money, and, therefore, the fourth and ninth above.

The Defendants did all of the above while rising to the level of racketeering, creating substantial direct and indirect damages for SILVERTHORNE.

The case is also premised on the request to declare SILVERTHORNE'S right to equally exercise Canadian property laws as an alternative because she is a dual

5

citizen whose rights are protected by a Treaty in matters concerning the tenure and disposition of property in both countries.

The United States District Court's Southern District of Florida has twice dismissed the Complaint for failure to meet Rule 8, the second time with one sentence, refusing an asked for written opinion on the case's causes of action, their structure, and integrity.

SILVERTHORNE believes, to this point, the pleading process in this instant case has unduly manipulated her due process and therefore access to the courts and a jury of her peers.  Because there was no opinion rendered on the TAC, the emphasis in the following statement of the case and facts, after dismissal of the SAC, is on the procedure of the case that interfered with its inherent merit with a second ruling it did not meet the minimum bar to succeed.

## STATEMENT OF THE FACTS AND CASE

 SILVERTHORNE filed her complaint in January 2012 [DE 1] and amended it twice while accomplishing service to the defendants, [DE 5, 36], once for simple typos and once to correct an incomplete name of one of the Defendants.

An order signed by the district judge referring the case to a magistrate was issued two weeks after filing on February 10, 2012 [DE 20] citing 28 U.S. C. § 636 (b) (1) No form from the clerk accompanied the referral asking for the parties' permission

6

for the magistrate to have the capability for any final disposition of any matter in the case, 28 U.S.C § 636 (c) (1). The magistrate's first action was to grant SILVERTHORNE's motion for leave to file the Second Amended Complaint ("SAC"), on March 16, 2012 [DE 31, 36*, pg. 1-38].

There were then nine defendants listed in the SAC, including two condominium associations. One of the condominium associations moved immediately to settle, and the magistrate granted a voluntary motion to dismiss them from the suit on April 10, 2012 [DE 50].

The original counsel for LPR —and the dismissed association— resigned shortly after SILVERTHORNE filed the suit [DE 32]. Becker Poliakoff replace them. There is no date for their appearance listed in the docket.

The Defendants all filed Motions to Dismiss [DE 34, 40, 43, 51]; SILVERTHORNE filed responses [DE 45, 46, 48, 52, 53, 61], amending some as she continued to research the law. The last motion was entered on April 30, 2012. Six months later the magistrate issued her first Report and Recommendation ("R&R") [DE 63*].

The first R&R on the SAC is relevant to the dismissal of the TAC because it does make one ruling that can be address on appeal, and because it begins to build a

definition for Rule 8 (a) (2) as one that regulates the length of the complaint and not one that sets a minimum bar to allow it to proceed to discovery and trial.

Docket entry 63 begins with a misattribution of SILVERTHORNE's own response motions as those of the Defendants [DE 63, Pg. 1]. It notes the involuntary dismissal of the association that settled and goes on for eighteen pages to incorporate inappropriate editorializing, and a condescending tone. It turns a blind eye to the main allegation of the suit: the Defendants conspired to deceive SILVERTHORNE's tenant to collect a false debt by pretending a Florida law applied to the LPR association, when they knew it did not, and then combined the use of the inapplicable law with threats to deny him access to his own abode − if he did not pay them.

On page two of the report [DE 63], the magistrate begins by describing the SAC by its number of pages (41), and as consisting of seven counts with its incorporated Declaratory Judgment request to determine the validity of an international Treaty's application to the case. She calls the SAC against nine defendants, "lengthy." She agrees SILVERTHORNE successfully pled the federal and state collection law's violations, notes the possible tolling effect of the ongoing stop-and-go actions of the Defendants, but ends by calling the overall allegations "frankly confusing," a "jumble" and a "laundry list" [DE 63 pg. 16]. The 41 paragraphs in the amended complaint are described as <u>over</u> [more than] 40 paragraphs, suggesting to this

8

legally uneducated *pro se:* there is error to be found in the numbers of the complaint.

The magistrate does name the seven counts of the SAC: violations of the Fair Debt Collection Practices Act, FDCPA, and its Florida equivalent, the FCCPA, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with a contract and a business relationship, breach of the Federal Trade Commission Act, and the Florida Deceptive and Unfair Trade Practices Act, with a declaratory judgment claim. She also notes SILVERTHORNE's attempt to make two more, albeit not formerly, fraud and breach of contract [DE 63, pg. 2-3].

The magistrate minimizes the suit by pointing to an illegal assessment as the "thrust" of the case instead of the fraudulent use of an inapplicable Florida law. She refers to the suit's main issue with a passing reference to "claims of fraud and breach of contract," [DE 63, pg. 3], and then recommends dismissal with prejudice for failure to state a claim for some counts against some defendants, such as the federal and state collection law violations [DE 63 pg. 9]. She ruled LPR and its Board members were creditors and dismisses Count I with prejudice, before discovery and without addressing counter arguments: the special circumstances of the case caused the association, and management company as well, to lose their protection because they sold the rights to collect the alleged disputed, delinquent and defaulted debt to a third party but remained in the active role of a joint

9

collector, while maintaining an on-going business relationship with LMF and BLG, which involved the use of an inapplicable law [DE 36, pg. 12-16; DE  69 pg. 13-18 *].

Counts were faulted for having missing allegations, some that could not be known before discovery, and some that were so common they could be judicially noticed: "The SAC does not set forth facts about each individual Defendant to support a plausible claim that each defendant had knowledge of the contracts between Plaintiff and her tenants and intentionally interfered with those contracts." [DE 63, pg. 14].

The magistrate does what she is supposed to do: gives analysis on all the SAC's Counts for applicability and structure and then dismisses all but Count I against LPR and its directors, DESORBO, DINICOLA and YEAMAN, without prejudice Count I is dismissed with prejudice. She concludes with terms that were new words for SILVERTHORNE's lexicon. She was guilty of  "conclusory allegations," "lumping" the Defendant's together and constructing a "shotgun pleading," which translated to a violation of Rule 8.  She fails to mention that the Federal Trade Act does not offer a private cause of action and Silverthorne erroneously repeats the Count in the TAC.

The opposition response to the R&R reargues all SILVERTHORNE's counts [DE 69 pg. 1-29]. At this point, she did not know enough about the law and Rule 8 to understand it was not about the length of the SAC. She argues it is not too long and establishes her distaste for the magistrate's tone and the statewide importance of the case [DE 69 pg. 2-11]. She then asks the court to explain why the "lumping" is inappropriate" [DE 69 pg. 12] and argues against the one ruling on law discussed: Count I is to be dismissed with prejudice because the LPR and its Directors are exempt as creditors [DE 69 pg. 13-17]. She ends with an argument there is no evidence the SAC is being liberally construed [DE 69 pg. 21-27].

The Defendants filed no responses to the opposition to the R&R. In January 2013, the district court affirmed and adopted the R&R and ruled the complaint violated Rule 8 [DE 71, *]. The court did not expound on "lumping," and directed SILVERTHORNE's attention to the magistrate's report's Section C [DE 63 pg. 5,-7], which described a shotgun pleading. [DE 71, pg. 2-3]. The order provided no examples and nothing else by way of an opinion on the SAC's causes of action or why, other than the shotgun accusation, the SAC violated Rule 8. SILVERTHORNE begged for further explanation. The court said: "[T]he court need not address the other arguments raised by the Plaintiff that do not relate to such failure to comply," [DE 71].

SILVERTHORNE submitted a Motion for Clarification and a Motion in Opposition to the Court's call on January 10, 2013[DE 72, 73].

Not yet aware of the rule of what was binding on the court she was dealing with, she used a non-binding case from the 5th Circuit to demonstrate she was trying to preserve issues for appeal *Douglass v. United States Auto Ass'n* 79 F 3d 1415 (5th Cir 1996), but on February 11, 2013, worried she would lose her right to amend, she submitted the TAC [DE 75 pg. 1-108 *], along with another objection motion [DE 74 pg. 2-6], citing more non-binding circuit case precedent to substantiate collection law applicability to LPR and BSM: *Bridge v Ocwen Federal Bank* 681 F 3d 355 (6th Cir. 2012) and *Teng v Metropolitan Retail Recovery Inc.,* 851 F. Supp. 61 (Dist. Court, ED New York 1994).

The TAC was now much longer than the SAC.   Missing allegations from the multitude of recalled events were added in an attempt to meet the requirements that certain counts be plead with the "specificity," required by Rule 9(b), especially for its new RICO count. SILVERTHORNE pled factual detail for the establishment of liability of each Defendant as far as it was known.

SILVERTHORNE told the court she was now armed with ammunition from the Pacer system statistics to support the length of the complaint [DE 74 pg.6].

The TAC plead the infractions for each defendant separately in most cases, except were research showed symbiosis of relationships allow them to be grouped, like the Board of Directors of LPR and SCHIENER and his management company BSM.

The court did not address the Motion for Clarification until two-and-one-half months later by denying it on March 25, 2013, nine days after Appellant filed the TAC [DE 114].

Only the statement of facts is re-pled, with the exception of re-alleging when it was appropriate, like the fraud allegations re-alleged in the RICO cause of action.

The TAC grew the story. To protect against a Rule 41 action SILVERTHORNE un-lumped, for the most part, the remaining eight defendants, and repeated the same charge against each of them over, and over, and over, and over and yet over again, substantially adding to the length of the document. It is five times longer than it should be because of the un-lumping of the Defendants.

There were hundreds of applicable documented events, which could have chosen to demonstrated substantiation for the factual elements of her counts; she chose 49.

The TAC, contained 30 counts[1] plus its Declaratory Judgment, which asked for the court to define her rights under an international Treaty that allow the her dual citizenship to pick the laws of the country of her choice [DE 75, pg.105]. Canada had no demand for rent law impacting contractual rental rights between tenant and landlord in a condominium environment.

Counts one through 18 are state and federal collection counts save Count 11, where SILVERTHORNE interjects the color of law count against BLG. The TAC includes inapplicable counts the Federal Trade Commission Act, 15 U.S.C. §§ 41-58, which the magistrate did not mention in her analysis of the SAC. It did not have offer a private cause of action. SILVERTHORNE also erroneously re-pled the collection counts against LPR and its directors, which had been dismissed with prejudice.  With the unlumping of the Defendants, she accumulated 72 pages before reaching the breach of contract and fiduciary duty against LPR and its directors, DESORBO, DINICOLA and YEAMAN. SCHEINER and BSM follow with duplicate aiding and abetting counts. The TAC moves on to tortious inference and color of lawcounts.  It ends with the fraud and RICO counts against all parties, 18 U.S.C. §§ 1961-1968 and 18 U.S.C. § 1341, [DE 75 pg. 88-104]. The request for a declaratory statement hearing on the Treaty is the TAC's caboose and the equity portion of the suit.

---

1 The TAC used the SAC's introduction and Appellant erred when she failed to change the description of it from eight counts  to 30

Because there is zero discussion of the counts, beyond an observation they are confusing, the TAC stands on its own merit. The Court must read it and judge it: Did it reach a minimum bar showing SILVERTHORNE was entitled to relief?

The magistrate denied amended requests to hear the Declaratory Judgment on an international Treaty [DE 91], and to disqualify Becker Poliakoff and its attorney, Steven Davis, [DE 87, DE 95]. The magistrate ruled outright without an R&R format and without telling the Plaintiff she could object to the order [DE 102].

The amended motion told the court there were emails for review back from when the firm of Becker Poliakoff first took over.  SILVERTHORNE did not ask for an evidentiary hearing because she did not then know the term, but she offered to show the emails to the court. The Becker Poliakoff attorney advised her on the correctness of his legal position to represent the association; he should have not given any advice at all.  Her failure to pursue the issue further at the time was based on excusable neglect: a prior relationship of trust existed with Steven Davis; she was mourning the recent death of her youngest daughter; and she was unfamiliar with the Florida Bar rules and their application [DE 95, pg. 1-8].  The mainstay of Becker Poliakoff's response was the timeliness of SILVERTHORNE's objections and an argument that the subject matter of the two circumstances were not the same [DE 89,100].

15

Despite the fact there was a missing R&R and the magistrate did not say SILVERTHORNE could object to her ruling, she did file an opposition exception to the magistrate's rulings, opposing the denial of the two motions [DE 105, 113, 116]. Addressing the need to declare treaty rights, she expounded on the federal court system's long history of the use of the Declaratory Judgment, 28 U.S. C. § 2201 to define rights under treaties, and its case law, including a case on the specific treaty in question [DE 105 pg. 1-4; DE 116 pg. 1-8].

The court ignored it, declaring them moot 13 months later when it dismissed the TAC for again violating Rule 8. The exception mentioned the law, 28 U.S.C 636.

On March 7, after a meeting of all parties' counsels and SILVERTHORNE, with the exception of Becker Poliakoff, who was a no show but sent word he would agree to anything his co-defendant's counsels agreed to, SILVERTHORNE filed a Joint Scheduling Report [DE 92 Attachment D]. On that report form, given to the parties by the court, was a check list of what the parties would allow the magistrate to do. It was now more than a year since the filing of the suit and magistrate involvement. All parties then present disallowed the magistrate from ruling on almost all matters. She was authorized to rule on discovery motions.

On March 14, 2013 the court revised the agreed to trial scheduling, abbreviating it and putting it on a fast track to include discovery being accomplished before the

16

Defendants even answered [DE 101]. The order referred only discovery motions to the magistrate, as the form had requested. SILVERTHORNE objected to the fast track. [DE 106, 112, 117, 119]. It was revised [DE 136]

The Defendants began to file their motions to dismiss against the TAC [DE 97, 103, 107, 108, 110, and 121]. SILVERTHORNE filed responses [DE 104,111,118, 120,122]. They said the TAC was still a shotgun pleading for re-pleading the statement of facts, and it failed to state any claim, (Rule 12 (b) (6).

Discovery commenced. Witness lists were filed [DE 129,130,131,134, 148].

Because the first R&R said any attachment to a complaint could be considered, SILVERTHORNE found, filed, and incorporated hundreds of pages in Exhibit lists of all the letters and email correspondence between the parties and her tenant, including a picture taken by her tenant of the open faced debt letter on her door, contracts establishing precise business relationships for her tortious interference counts, and her correspondence to the state of Florida's condominium regulators [DE 138,* 139,* 144*]. Docket entry 138 and 139 were filed before the magistrate released her R&R, on June 17, 2013[DE 140 pg. 1-10 *]. It did not mention the recently annexed exhibits. The last set of exhibits were submitted soon after [DE 144]. The court never mentioned any of them in the R&R or its adoption.

17

The magistrate again minimized the "thrust" of the lawsuit, saying it was about the illegal assessments, calling the known fraudulent use of a Florida law, which SILVERTHORNE now said rose to the level of racketeering, "other allegations in connection with the collection and assessment of those fees," [DE 140 pg. 3].

The emphasis is again on the TAC's numbers. It notes its 108 pages and its 280 paragraphs twice on the same page [DE 140 pg. 3] and then yet again [DE pg. 7].

The mawkish term "laundry list" is reuse in the TAC, but this time not for SILVERTHORNE's allegations of how she was harmed, which are to be taken by the court as true. It refers to the list of state and federal laws the claims were based on [DE 140 pg. 4].

The Defendants requested dismissal on Rule 8 (a) (2) and 12(b) (6) grounds.

Nowhere in the second R&R does the magistrate mention the TAC's need to live up to Rule 9(b) standards for several causes of action, including the RICO claim. Only one procedural rule is discussed, Rule 8. Nowhere in the R&R is any matter of law discussed that does not pertain to shotgun pleadings. There is no analysis on the Counts like there was in the SAC.

The magistrate notes that the TAC has grown without acknowledging the un-lumping she requested was the reason. Shotgun pleading and discussions of the numbers of the TAC are the mainstay of her R&R. It is an affront to Rule 8 by its

18

numerical description alone, and she makes her opinion clear with continued

inappropriate editorializing: "Unfortunately, the most recent complaint is

considerably longer and more confusing than its predecessor," [DE 140 pg. 7].

The only example the magistrate gives of an instance where the TAC is confusing

is telling. She says the titling of Count 28, as against LMF and BLG, followed by a

reference to them in the body of the count as defendants, is confusing because it

might be taken as referring to the other defendants in the case. SILVERTHORNE

did not collectivize the Defendants in her TAC.

The TAC should be dismissed under Rule 8, she said, still calling the format

shotgun for restating only the statement of facts, the pleading choice of over 60

percent of the Eleventh Circuit Court's attorneys.[2] [DE 140 pg. 5].

The magistrate does not address the reason all the facts are relevant to each and

every count except where there was a privity of contract relationship [DE 75 pg. 1-

28]: Everyone conspired together. Everyone knew or should have known the facts

of the case, including the history of the alleged debt, before they acted, because

every fact was a predicate for their actions that should not have been ignored.

SILVERTHORNE again copied an attorney on her TAC, one of the majority of the

Eleventh Circuit firms (60 percent), filing in the Pacer system who used the

statement of facts re-alleged over each count.

_____

2 The statistics were deciphered through sampling the Pacer system on the tristate Eleventh Circuit.

The magistrate finds herself confused by a story that expounds *only* on actual events. She recommends SILVERTHORNE be given only one more chance to amend, be warned of dismissal with prejudice, and not allowed to add new causes of actions, [DE 140 pg. 9]. She does not address the counts, other than to name them, nor are their elements or needed allegations talked about; and rule 9(b) analysis is absent.

SILVERTHORNE filed a response with objections to the magistrate's report. [DE 143 *].  Using recent case law and recent decisions on motions to dismiss emanating from the Middle and Southern District courts of Florida at the same time, she supported her statement the TAC was grammatically correct, not a shotgun pleading, and not long, given it was: eight merged cases covering tolling events of four years, incorporate many individual counts, and− she reminded the court− the Defendants own misconduct was the root of the many causes of action. They had never answered, and therefore new claims added would present no extra burden. SILVERTHORNE reserved the right to do so in the TAC and SAC, pending discovery [DE 143, pg. 1-4].

The response, objecting to the R&R was joined by a request which is titled an extension of time to amend [DE 141 pg. 3 *]. SILVERTHORNE moved to do this after the R&R ruling *only* to address the trial track schedule date for all amendments to become complete and so states. It has nothing to do with the ruling

20

that would later come adopting the R&R and giving the Plaintiff till May 8, 2014 to amend, a time frame that was suspended with the filing of the Rule 60 motion for reconsideration on the dismissal without prejudice, until it was ruled on. The then Plaintiff was worried about the conflict in the trial schedule which gave her until a certain time to ask for any amendments. It was fast approaching while the pleading evaluation was on-going.

She said if the court adopted the R&R, she would appeal [DE 141 pg. 3].

In her Response, SILVERTHORNE: points to the 300 pages of exhibits recently filed for their consideration [DE 143, pg. 2]; supports combining LPR and its Directors in counts because of their symbiotic relationship [DE 143 pg. 2]; gives recent Southern District decision supporting her argument the TAC is not a shotgun pleading;  states Count 28 is grammatically correct [DE 143, pg. 4]; says she contingently withdraws her request to amend if the court adopts the R&R because she will then appeal; but says if the R&R is rejected and a full opinion is given she will amend [DE 143 pg. 5]; and she again suggested it was a bias, political decision interfering with her Seventh Amendment rights, and its imperfections should be liberally construed.  Her argued allegations were actual events that happened; there was no conclusory element anywhere to be seen. She specifically asked the court to address her objections to the magistrate's order denying the request to declare

the Treaty rights, the request to recluse her former counsel, and to read the submitted exhibits before ruling [DE 143, pg. 5, 6].

The Defendant BLG filed a response which was adopted by the other Defendants [DE 145]. They agreed with the R&R and the disallowance of further claims because it had been a year and a half since filing, a truism that was due to the district court's handling of the case, and its long time frames to rule. Discovery was not completed. They had not even answered. SILVERTHORNE reserved the right to add claims in the SAC and TAC after discovery.

The BLG response also pointed to the exhibits filed, including their collection letters on behave of LMF and LPR saying: "[T]he deficiency of the TAC is highlighted and magnified by Plaintiff's recent filing of numerous pages of "exhibits" to the TAC. When incorporated into the TAC, these multifarious documents only magnify the problems with the pleading," [DE 145, pg. 2].

The court stayed the case on August 21, 2013, [DE 155], after SILVERTHORNE filed motions to compel discovery, but before they were ruled on.

In April 2014, ten months after the second R&R was issued, the court adopted it in its entirety, dismissed the complaint without prejudice and without opinion, and gave SILVERTHORNE three weeks to file the fourth amended complaint, to May 8, 2014. [DE 156 *]. The court denied all pending motions as moot. The pending

22

motions were the exceptions and objections to the magistrate's rulings on the Treaty rights, the denial of her request to recluse her former counsel, Steven Davis and the motion to extend time to amend under the trial track amendment cutoff date [DE 141].

Before appealing, SILVERTHORNE decided to file a motion for reconsideration, having read case law where an appellant was faulted for not so doing. She knew that the reconsideration motion **stayed everything until decided, including the May 8 2014 date for amendment,** but she was still worried about the Motion for Extension of Time for Amendment in the trial track, which had not been ruled on [DE 141].    She reiterated that request in DE 157, while at the same time freezing the amendment time of May 8, 2014 set in the adoption of the R&R by automatically extending it with an incorporated reconsideration motion [DE 157*].

But she then amended the Motion to Reconsider [DE 159 *], on May 7, 2014. She withdrew the motions, DE 141 and 157.  She realized the court never ruled on DE 141 because the court stayed the case. She figured out this made the request moot. When she got the notice of the April 17, 2014 adoption of the R&R, she was two days away from her last final examination in journalism school and in the middle of final media projects, there was excusal neglect present in the moment.

In the first paragraph of the first page of DE 159 she says she "withdraws her other motion." SILVERTHORNE eliminated Docket entry 157's request to extend the amendment time in the trial track with the amended reconsideration motion. There was no request present to amend in docket entry 159; it was only an updated version of the reconsideration portion of the motion. The structure of docket entry 157 was to combine more than one motion in a list of motions.

She asked in its title, to strike the orders of the magistrate because she had no consent for involvement as one who could issue orders of final disposal. Her order refusing the hearing of a Declaratory Judgment to define possible Treaty rights and to recluse the opposing counsel were rendered without the required R&R format or notice they could be objected to[DE 159].

SILVERTHORNE amended the reconsideration motion again six months later, in late October 2014, when no ruling from the court was yet in place because she had continued to study the law. The very difficult thing about the law is that there is so much of it. A summary of the reconsideration motions argued the missing evaluation of procedural laws negated the adoption of the R&R [DE 166 pg. 1-14*]:

1) The court had to evaluate the TAC under Rule 9(b) as well as Rule 8 (a) (2) because of the fraud and RICO counts. The rules had to be reconciled.

24

2) The wrong standard of review was used. The 2007 and 2009 *Twombly/Iqbal* standards were not addressed to *pro se* litigants. The standard should be the case that followed *Twombly*, *Erickson v. Pardus*, 127 U.S. 2197, (2007).

3) Irrespective of her *pro se* status the complaint's length, in part, was an attempt to live up to the need to raise the merits of the case from the possible to the plausible by pleading enough facts to meet the *Twombly/Iqbal* standard for the fraud and RICO

4) No written opinion giving examples of statements that were not plain spoken or superfluous accompanied the order.   SILVERTHORNE then thought Rule 8 governed the length of the complaint because of the many aspersions emanating from the magistrate, negatively portraying the  fact of the SAC and TAC's length.

5) The court's closing of the case required refiling and new summons creating an unnecessary financial burden.

6) The magistrate acted improperly by not ruling on substantive matters addressed in the motions to remove Becker Poliakoff and the request to hear the Treaty in a report and recommendation format.

7) The TAC was no longer a shotgun pleading, and the court was treating a *pro se* pleadings in a more stringent manner than licensed attorneys.   Many Eleventh Circuit tristate attorneys use the shotgun and are not bothered by opposing counsel nor challenged by the court.

8) The implications of a win for the Plaintiff impacted statewide on associations' potential liability for using the law to collect without amending

their documents, and on other attorneys who, like BLG, statewide, advised

and or helped their clients break the law, including those who had

represented LPR.

9)   The treatment of the litigant was impinging on her Seven Amendment

rights.

Because she had been out of the country attending school, she had developed a

habit or routinely checking the Pacer system, and expected, after nine months, to

see the ruling on the reconsideration motion of the dismissal without prejudice, any

day.  On January 27, 2014, she saw a notation of a "paperless order"[ DE 167]: the

court denied the withdrawn motion [DE 157], to extend the time for amendment in

the trial track, an issue which was by then moot because the date passed, the case

was stayed, and the request to extend time for amendment withdrawn [DE 159].

The notation it was a "paperless order" on the system in effect the previous month

is described on another EMF of the federal court system as follows:

> At his or her discretion, a judge may rule upon a motion by
> having a text only entry made on the docket. There will be no
> PDF document attached to the entry. The system will however,
> generate a notice of the entry. Such entries have the same force
> and effect as any other type of order. You will receive
> electronic notice of the filing of the order; however, the notice
> will not have a link to a document.

SILVERTHORNE is a *pro se*; therefore, not allowed to file or receive pleadings

through the electronic system; she may only view it, and she did not receive it by

26

mail.   Seeing it on PACER by happenstance does not qualify as service; therefore, there was no service of the paperless ruling.

The action of the court was incongruous.  SILVERTHORNE drafted and personally filed, the next day, a motion asking to reconsider the court's action by vacating the order, because it ruled on a withdrawn motion [DE 168]. It does not contain a defense of no service because it was the next day; she assumed it was in the mail.  She only later researched why she did not receive it. There was not yet a ruling on the motion for reconsideration of a dismissal without prejudice, which, when it came, had to come with an amendment date at the same time to remain an adjudication on a dismissal without prejudice, no matter what SILVERTHORNE subsequently did, else the court was affecting a dismissal with prejudice, without saying and before ruling on dismissal without prejudice, a procedural cart before the horse that abridged her substantive rights.

SILVERTHORNE thought perhaps with the passage of time the court forgot she withdrew the motion. [DE 157].

The court denied the motion asking it to vacate a ruling on a withdrawn motion, two days later, and simultaneously denied the amended motion for reconsideration of the dismissal without prejudice, both on January 28, 2015, without incorporating a time for amendment [DE 159, 166], [DE 169, 170].

27

The ruling was a wolf-in-sheep's clothing. It was in actuality a dismissal with

prejudice because it allowed no amendment after dismissing the TAC without

prejudice.  SILVERTHORNE did not ask the court to reconsider the allowance of

amendment; given the court might overturn the dismissal of its magistrate in whole

or in part and render a constructive evaluation of the TAC, she would then amend.

It is clear and not conclusory to say the court tried to dismiss with prejudice

without saying so outright, a foul ball, which the court elected to render with a

"paperless order," electronically.  The *pro se* Plaintiff was lucky to see it on time.

The denied reconsideration order's authorities consisted of two precedents that

faulted the reconsideration motion for not introducing new evidence or pointing

out clear errors of law.  An error in law cannot be argued when the one sentence

opinion did not talk about matters of law at all; however, given rules of procedure

and case precedents are types of laws, they were talked about in abundance in the

amended motion for reconsideration: Rule 9 (b)'s exclusion in the R&R is argue at

length, as is the fact the wrong standard was used to assess a unrepresented

litigant's efforts to obtain justice [DE 169]. The court in its adoption of the R&R

discussed only procedure, in a one sentence opinion.  It was only relevant

procedure in part– Rule 8 (a) (2). It gave no opinion of its use to dismiss or rules

9(b) or 12(b) (6).  SILVERTHORNE did submit new evidence and pointed it out to

the district court: its TAC incorporated exhibits, one of which she submitted after

28

the R&R. They backed up with documentation every word SILVERTHONRE pled and more.

SILVERTHORNE filed the appeal on February 27, 2015. The district court made its dismissal without prejudice officially a denial with prejudice, with words instead of its actions, in a final order of dismissal with prejudice, five days later on March 2, 2015 [DE 173]. The Appellate Court said it was without jurisdiction to do so

## STANDARD OF REVIEW

The standard of review for a Rule 8(a) (2) dismissal is abuse of discretion, *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) ("We review for abuse of discretion a district court's dismissal for failure to comply with the rules of court."). Whether the allegations in the complaint are sufficient to state a claim upon which relief can be granted require a *de novo* review, "accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Cinotto v. Delta Air Lines Inc.,* 674 F.3d 1285, 1291 (11th Cir.2012). The standard of review for the violation of the Fifth Amendment through procedural abuse of the *Rules Enabling Act*, 28, U.S.C. § 2072, and the *Judiciary Act of* 1789, Section 19, and therefore the First and Seventh Amendments, is through 28 U.S.C. Chapters 3, 13, 15, 21, 47, 57 and

29

SILVERTHORNE's substantive rights and therefore the *Rules Enabling Act* and the Fifth, First and Seventh Amendment.

The court's treatment of the odoriferous case is wrong-minded. It has unduly delayed a pursuit of justice, for more than three -and- a-half years.

The district court abused its discretion: in its manner of denying the motions ruled on by the magistrate without an R&R and advice an opposition motion could be made, or, alternatively, the orders should be stricken; the dismissal with prejudice on the SAC's allegation that LPR and its Board of Directors lost its creditor status before discovery was premature, and the denial of a no longer existent request to extended a trial track date was a procedural error, which instigated a dismissal with prejudice without due process.

The TAC was plain spoken. SILVERTHORNE writes well. She entered university in Canada and graduated in 2014 from its journalism school with the highest honors her school accords.   She studied and read law and case law– continually– for over one year before filing the TAC. She has read multitudes of *pro se* efforts and court opinions on them. The TAC is as good as it gets for a legally uneducated litigant trying a complex case against a gaggle of defendants. Rule 8 is not about length. The word short refers to what the litigant must accomplish at a minimum. SILVERTHORNE length is solely attributable to the district court's adoption of a

31

specifically through Local Rule of Appellate Procedure 47, and its "responsibilities

for the effective and expeditious administration of justice within the circuit."

## SUMMARY OF THE ARGUMENT

A *Pro se* did a more than adequate job in both deciphering and presenting the cause

of actions and damages embedded in the Defendant's actions.  The TAC is not

perfect but precisely tells a non-confusing story and states who is being charged

with which cause of action and why.

There is not been one dollop of liberal construing of the complaint. The wrong case

law is used to weigh the complaints of unrepresented litigants; it should be the case

that followed the Supreme Court's *Bell Atlantic v Twombly* precedent: its decision

in *Erickson v. Pardus*.

Because neither the magistrate nor district court specifically referenced the

incorporated exhibitsit, cannot be said to have done a *de novo* review.

The court did not reconcile Rule 8 with Rule (9) (b) for SILVERTHORNE's

counts.

The court's misuse of Rule 8, its failure to fully explain its actions, in the opinion-

less, minimalist order, or address the other pleading rules, 12(b) (6) and 9(b),

combined with the long time frames to rule (up to 13 months), to violate

30

report that said she improperly lumped the Defendants together. The statement of

facts do, REPEAT, do apply to all the Defendants because it was a conspiracy, and

only discovery can ascertain what went on behind the scenes. For example when

LPR breached the condominium contract, it applied to BLG and BSM and LMF

because they knew about it, and still pursued the debt under a false pretense.

## ARGUMENT

1. THE DISTRICT COURT IMPROPERLY HELD THE COMPLAINT
   VIOLATED RULE 8 (A) (2) BECAUSE:

   A. The wrong standard of review was used.

   .

"The holding departs in so stark a manner from the pleading standard mandated by

the Federal Rules of Civil Procedure that we grant review," *Erickson v. Pardus,*

127 U.S. 2197, (2007).

The above mentioned case was decided after the *Bell Atlantic v. Twombly* landmark

precedent, and it makes adjustments to it with the added ingredient of a *pro se*

present. Rule 8 (a) (2)'s requirement for a short and plain statement of the case is a

bar set for what a plaintiff must accomplish <u>at a minimum</u>.

32

Federal Rule of Civil Procedure 8(a) (2) requires _only_ "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "`give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S.127 1955, 167 L.Ed.2d 929 (2007) (quoting _Conley v. Gibson, 355 U.S. 41, 47, 78, 99, 2 L.Ed.2d 80 (1957)) Erickson v. Pardus,_ 127 U.S. 2197, (2007). (emphasis added).

The Supreme Court mentions the *Twombly* precedent but only in the context of the necessity to except the plaintiff's allegations as true.

In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at ___, 127 S.Ct. 1955 (slip op., at 8-9) (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); _Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))._

The *Twombly* cases' operative word "plausible" appears nowhere in the Supreme Court's *Erickson* opinion.   Is this not a clear indication, for a *pro se,* the nation's highest court is saying their standard remains that any set of allegations only be judged possible as in *Conley v. Gibson,* 355 U.S. 41, 47, 78, 99, 2 L.Ed.2d 80 (1957)?

The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a) (2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is

33

"to be liberally construed," *Estelle,* 429 U.S., at 106, 97 S.Ct.
285, and "a pro se complaint, however inartfully pleaded, must
be held to less stringent standards than formal pleadings drafted
by lawyers," ibid. (internal quotation marks omitted). Cf. Fed.
Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do
substantial justice"). *Erickson v. Pardus,* 127 U.S. 2197, (2007).

Rule 8 never attempts to put a limit on the number of allegations or causes of

action the definition allows; it only sets a minimum bar.  How could it, without

making a federal rule compromise the First and Fifth Amendment, Appellant's free

speech and due process, and therefore violate the *Rules Enabling Act* of 1934?

At the pleading stage, a complaint must contain a "short and
plain statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a) (2). Plaintiffs must plead <u>all</u> facts
establishing an entitlement to relief with more than "labels and
conclusions" or "a formulaic recitation of the elements of a cause
of action." *Twombly,* supra (emphasis added)

SILVERTHORNE did plead <u>all</u> facts necessary to establish her

entitlement to relief, one by one, to unfold the four year story, for the

purpose of building tolling arguments, and to put in enough facts to

demonstrate the outrageous affront to her rights accomplished by all

the Defendants, working together.

[I]t is pellucidly clear that the Conley Court was
interested in what a complaint *must* contain, not what
it *may* contain. In fact, the Court said without
qualification that it was "appraising the sufficiency of
the complaint." 355  U.S., at 45, 78 S.Ct. 99

34

(emphasis added). It was, to paraphrase today's
majority, describing "the <u>minimum</u> standard of
adequate pleading to govern a complaint's survival,"
ante, at 1969.ble <u>before discovery</u>. *Bell Atlantic Corp.
v. Twombly,* 550 U.S.127 1955, 167 L.Ed.2d 929
(2007) (emphasis added)

The TAC uses plain language in properly constructed sentences.

SILVERTHORNE is a proven scholar and business woman, having

excelled in everything she has ever done, from business management,

marketing and consulting, to chemistry, data communications and

journalism, the plain spoken science of explanation. When she walks

into a doctor's office there is no requirement that she must learn

medicine to be diagnosed. She has been forced to learn the law to

plead her case and then faulted and demeaned for not learning it well

enough. She does not practice the profession.

The TAC is not a shotgun pleading, where "it is virtually impossible to

know which allegations of fact are intended to support which claim(s)

for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77

F.3d 364, 366 (11th Cir. 1996). It does not cumulatively re-allege,

although it is noteworthy to point out the SAC copied a winning

attorney, who was never challenged by the court or the opposing

attorney. Research on Pacer during this period showed almost one-

third of the Eleventh Circuit's attorneys shotgun plead without

challenge from opposing counsel or *sua sponte* by the courts. The

TAC's treatment should be compared to other complex cases,

involving multi-defendant conspiratorial litigation; see the much,

much longer and convoluted case referenced on pages 2-3 of DE 143,

*Associated Industries Insurance Company, Inc., v. Advanced*

*Management Service, (* SD Florida, 2013 Case no: 12 cv 80393).

      B.  The district court failed to evaluate and reconcile the TAC
          on the basis of rule 9(b).

The TAC contained counts which required detailed pleadings done with

"specificity": fraud and the RICO Act, 18 U.S.C. §§ 1961-1968.

The "badges of fraud" moniker is present in this case. There was a business

relationship between the parties. It was a conspiracy.

> "In *Banner Constr. Corp.,* the court concluded that '[t]he
> recognized indicia or badges of fraud include the fact that the
> parties to the disputed transfer are related, one to the other, by
> blood or marriage, or are associated in business.'" *General*
> *Trading v. Yale Materials Handling Corp.*, 119 F. 3d 1485 (11th
> Cir. 1997)

Despite the fact SILVERTHORNE proceeded *pro se,* and should have

everything she does be liberally construed, she tried with great effort to meet the

36

rule 9(b) standard, exploring the "badges of fraud," and saying, to the best of the known facts, without completed discovery, who did what, when, where and how. The court failed to evaluate the complaint under Rule 9(b) for these counts. SILVERTHORNE wanted to know before she amended: Are her allegations more than adequate to survive a motion to dismiss under 9(b) standards on the fraud and RICO counts, and did she have to add the state employees to prevail on the color of law count to survive a 12 (b) (6) dismissal? See *Ziemba v. Cascade Int'l Inc.*, 256 F. 3d 1194, 1202 (11 Cir. 2001) *See also Hopper v. Solvay Pharm, Inc.,* 588 F 3d 1318, 1324 (11 Cir. 2009); *Amer Dental Ass'n v Cigna Corp.,* 605 F.3d 1283, (11th Cir. 2010)

> The plausibility standard "calls for enough fact to raise a
> reasonable expectation that discovery will reveal evidence" of the
> defendant's liability. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.
> But if allegations are indeed more conclusory than factual, then
> the court does not have to assume their truth. See *Mamani v.
> Berzain,* 654 F.3d 1148, 1153-54 (11th Cir. 2011). *Chaparro v.
> Carnival Corp.*, 693 F. 3d 1333 (11th Circuit, 2012).

All of the allegations in the TAC's statement of facts describe actual events, laws, and contents of the condominium documents, and they are backed up by written proof in her exhibits.  SILVERTHORNE was a former business woman and owner of a multi-county real estate brokerage business; she documented everything. This is not an appellant says, appellee says, law suit.   The allegations are not conclusory. They happened.

37

Does SILVERTHORNE's TAC sufficiently state claims for which relief can be granted —and for which counts? Does she have a right to know more than three-and-a-half years after she filed suit?

Rule 9(b) says "a party must state with particularity the circumstances constituting fraud or mistake." "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). If the court had evaluated the complaint under 9(b) as well as 8(a), could they have dismissed for 8(a)? Is the court's failure to evaluate under 9(b) another indication of the misuse of Rule 8 in this case?

> Rule 9(b) must not be read to abrogate rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading. See *Zuckerman v. Franz*, 573 F.Supp. 351, 356 (S.D.Fla.1983); *Xaphes v. Shearson, Hayden, Stone, Inc.,* 508 F. Supp. 882, 887 (S.D.Fla.1981). *Friedlander v. Nims*, 755 F. 2d 810 (11th Cir. 1985.

There was a front and center need to harmonize these rules in this complex case, and it was not done.

    c. Prima facie evidence there was not a *de novo* review exists in the fact neither the magistrate nor the court specifically mentioned the later incorporated exhibits to the pleading.

No case law precedent can be found in the Eleventh Circuit to buttress this argument; however, one exists in an Eight Circuit case that is similar. There was a transcript in the proceeding and neither the R&R nor its adoption specifically mention its inclusion in its assertion of *de novo* review. Here, the exhibits equal a transcript of events and should have been mentioned, *Jones v. Pillow*, 47 F. 3d 251 (8th Cir. 1995).

2. WHETHER THE COURT VIOLATED SILVERTHORNE'S SUBSTANTIVE RIGHTS UNDER THE FIFTH AMENDMENT, AND THEREFORE ACCESS TO THE COURTS UNDER THE FIRST AMENDMENT AND A JURY TRIAL UNDER THE SEVENTH:

A. The manner in which Fed R. of Pro. 8(a) (2) was used in this case for other than its purpose, and the denial of amendment before ruling on a motion for reconsideration of a dismissal without prejudice, violated the substantive rights of this plaintiff and therefore the *Rules Enabling Act*, 28 U. S. C. § 2072.

SILVERTHORNE does not challenge Rule 8; it is a fair and sensible law. It sets a minimum bar and not a maximum one. She *does* challenge the Southern District of Florida's use of it in case number 12-cv-20325 as violating 28 U. S. C. § 2072

> Hence we conclude that the Act of June 19, 1934, was purposely restricted in its operation to matters of pleading and court practice and procedure. Its two provisos or caveats emphasize this restriction. The first is that the court shall not "abridge, enlarge, nor modify substantive rights," <u>in the</u>

39

> guise of regulating procedure. The second is that if the rules
> are to prescribe a single form of action for cases at law and
> suits in equity, the constitutional right to jury trial inherent
> in the former must be preserved.... We are thrown back,
> then, to the arguments drawn from the language of the Act
> of June 19, 1934. Is the phrase "substantive rights" confined
> to rights conferred by law to be protected and enforced in
> accordance with the adjective law of judicial procedure? It
> certainly embraces such rights . . . , *Sibbach v. Wilson &
> Co.*, 312 U.S. 1 (1941) (emphasis added).

The court used Rule 8 on the TAC for other than what it was designed for, against

an unsuspecting *pro se*, who took the magistrate's comments, on their face: The

court's emphasis on the numbers in the complaint's allegations, pages, and

paragraphs, could only be interpreted to mean she had to shorted the TAC and

therefore threaten its ability to meet the elements in its counts.

> The *Rules Enabling Act*, 28 U. S. C. § 2072 (1958 ed.),
> provides, in pertinent part: "The Supreme Court shall have
> the power to prescribe, by general rules, the forms of
> process, writs, pleadings, and motions, and the practice and
> procedure of the district courts of the United States in civil
> actions. "Such rules shall not abridge, enlarge or modify
> any substantive right and shall preserve the right of trial by
> jury . . . ," *Hanna v. Plumer*, 380 U.S. 460 (1965), quoting
> *Sibbach v. Wilson & Co.*, 312 U. S. 1, 14,

SILVERTHORNE reads the *Erickson* precedent and the fact the Supreme Court of

the United States has never uttered the words "shotgun pleading" to mean the

highest court in the land would rule the shotgun format, if present, is to be ignored when the pleader is a *pro se*, because it meets the description of a complaint "inartfully" pled, and no matter how the word "inartfully" manifests itself, it must be disregarded.   As part of their duty to liberally construe, a court must judge the pleading on its Statement of Facts. That is how the highest court in the land decided *Erickson*.

The court cannot help her. It cannot harm her either. It has in this case. The TAC is not a shotgun pleading. The story is not confusing, and it contains no conclusory allegations. In retrospect, even the SAC's lumping was discriminate and allowable. A plaintiff's fortune in the courts cannot be tied to a judge or a subject matter. It must rest solely on its merits.

> The mere fact that all three Defendants are alleged to
> have breached the settlement agreement in the same way
> does not require that Plaintiff plead a separate count
> against each Defendant for exactly the same alleged
> breach. Third, even if Plaintiff intended to plead the
> claims against the different Defendants in the alternative,
> Rule 8(d), Fed. R. Civ. P., permits a party to "set out 2 or
> more statements of a claim or defense alternatively or
> hypothetically, either in a single count ... or in separate
> ones...." In short, the Complaint adequately puts
> Defendants on notice of the ways in which Plaintiff
> alleges each Defendant breached the settlement
> agreement. *Lahtinen v. LIBERTY INTERNATIONAL
> FINANCIAL SERVICES, INC.*, (SD Florida, 2014, case
> No: 13-cv 61766).

41

> [T]he simple fact that the Complaint alleges that both
> Defendants Anzalone and Schuler participated in the
> same challenged conduct does not somehow render the
> Complaint confusing or unclear as it regards what
> Plaintiff claims Defendants Anzalone and Schuler did.
> Thus, Defendants' objection on this ground must be
> overruled. *Id*

Rule 8 requires that federal courts give pleadings a liberal reading in the face of a

12(b)(6) motion to dismiss. Was there an abridgment, or modification, or

enlargement of Rule 8? "It is too late in the day and entirely contrary to the spirit

of the Federal Rules of Civil Procedure for decisions on the merits to be avoided

on the basis of mere technicalities, *Forman v Davis*, 371 U.S. 178 (1962).

There is no opinion on the Rule 12(b)(6) claims of the Defendants in the second

R&R, and it does not even mention Rule (9)(b)'s requirement for certain counts.

It's inadequacies is sending an appellant all the way to the Appeals Court, three-

and-a-half years after filing, presenting a great expense in money and time for all

concerned, with little return. If the Court says SILVERTHORNE met the Rule 8

minimum bar, she must return to Dodge to fight on over the Defendant's 12(b)

(6) claims, some of them under the auspices of having to be plead with Rule 9(b)

precision.

Irrespective of the fact SILVERTHORNE withdrew the motion for an extension

of time to amend listed on the trial track, the denial of amendment itself, thereby

affecting a dismissal with prejudice without saying so, or without first ruling on a

42

motion for reconsideration on a dismissal without prejudice, can be equally called

an affront to the *Rules Enabling Act*. Can a court deprive a litigant of substantive

rights with its procedure?

> Though the proceeding in question is divested of many of the
> aggravating incidents of actual search and seizure, yet, as before
> said, it contains their substance and essence, and effects their
> substantial purpose. It may be that it is the obnoxious thing in its
> mildest and least repulsive form; but illegitimate and
> unconstitutional practices get their first footing in that way,
> namely, by silent approaches and <u>slight deviations from legal
> modes of procedure</u>. This can only be obviated by adhering to the
> rule that constitutional provisions for the security of person and
> property should be liberally construed. A close and literal
> construction deprives them of half their efficacy, and leads to
> gradual depreciation of the right, as if it consisted more in sound
> than in substance. It is the duty of courts to be watchful for the
> constitutional rights of the citizen, and against any stealthy
> encroachments thereon. Their motto should be *obsta principiis*.
> *Boyd v. United States*, 116 U. S. 616 (1886). (emphasis added).

B. It failed to render a full written opinion on all the application of
all pleading rules and their impact on the TAC's counts in
accordance with its responsibilities under Eleventh Circuit case
precedent and the *Judiciary Act of 1789*, Section 19.

Assuming the Appeals Court does not agree with the district court that the TAC

failed to meet Rule 8's minimum standard, then had the district court ruled on not

only Rule 8, but also the other rules covering procedural pleading, the Rule 12 (b)

(6) claims, as it did in the SAC, and the heightened pleading standard needed for

some of the counts under Rule 9(b), it could efficiency and fairly rule on the TAC

43

in a manner that let SILVERTHORNE and the Defendants know where they stand. This Court says the district courts "have the power and the duty to define the issues at the earliest stages of litigation See *Ebrahimi,* 114 F.3d at 165 (11th Cir.1997); *Fikes*, 79 F.3d at 1082-83 & n. 6 (11th Cir.1996); *Anderson v. District Bd. of Trustees of Cent. Fla. Community College,* 77 F.3d 364, 367 n. 5 (11th Cir.1996)," *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F. 3d 1290 (11th Cir. 1998).

The case that gave birth to judicial review said it first. "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity *expound* and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each," *Marbury v Madison,* 5 U.S. 137 (1803) (emphasis added).

The district court failed its duty in the earliest stages of this case and continued to fail three years on into it. The order needed a full, further opinion on how the TAC complies with rules 12 (b) (6) and (9b).

This Appellant is before the court with a lesser chance for review than an appellant that comes with a full opinion in hand that addresses all procedural rules governing the complaint together with matters of law affecting the case.

The bedrock law that allowed the federal courts existence in the first place says a court must fully explain itself. The *Judiciary Act of 1789*, Section 19, which is still in full force and effect for this suit in equity, impacts on Section 25 of the same law, which disallows an appeals court from reviewing anything not on the record. The court gave no opinion and only ruled the TAC did not make the minimum bar without saying why, and it stood moot on Rule 9 (b) and the 12 (b) 6 claims. With the exception of the one dismissal with prejudice in the SAC, we cannot debate the other counts, *Weiland v. PALM BEACH COUNTY SHERIFF'S OFFICE,* Court of Appeals, No 13-14396 (11th Cir. 2015).

The district court has therefore introduced appeal prohibitions for consideration of matters not on the record for SILVERTHORNE. Dueling procedural requirements, 8 (a) (2) and 9(b), which must be harmonized are left un-harmonized, and the matters of law that address the Defendants 12(b) (6) claims are nowhere to be seen.

> And be it further enacted, That it shall be the duty of circuit courts, in causes in equity and of admiralty and maritime jurisdiction, to cause the facts on which they found their sentence or decree, fully to appear upon the record either from the pleadings and decree itself, or a state of the case agreed by the parties, or their counsel, or if they disagree by a stating of the case by the court. *See Judiciary Act of 1789,* Section 19 <u>SEE</u> *An Act to Establish the Judiciary Courts of the United States* Ch. 20 §§ 19 and 25 1 Stat.

45

With the issue of the abuse of Rule 8, the neglect of its duty to say what the law is, and the length of time elapsed, if the Eleventh Circuit agrees the district court compromised SILVERTHORNE'S substantive rights, it can take action.

SILVERTHORNE got one sentence in her opinion: "Plaintiff's Third Amended Complaint is **DISMISSED** without Prejudice for violating Federal Rule of Procedure 8.

No litigant, represented or acting as a *pro se,* has ever received the federal silent treatment to the extent that SILVERTHORNE got it from Florida's Southern District division of the government's federal court. "Discretion means that the district court may act within a "range of choices," and we will not disturb the decision "as long as it stays within that range and is not influenced by any mistake of law." *Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1337 (11th Cir. 2005). Irrespective of the fact SILVERTHORNE argues there were mistakes of law, the silent treatment is not within a range of choices in a federal court as a matter of law, and the Appeals Court has the power to address its district court's use of its power:

> The statement of facts conforms to section 19 of the Judiciary
> Act of 1789, which required a circuit court when deciding a
> case in admiralty or equity, to make sure that the facts
> underpinning its ruling appear on the record either by way of

the pleadings and decree ..... or in the last resort, generated by the court itself. DHSC, 4:76, Stat 1:83[3].

3. WHETHER IT WAS AN ABUSE OF DISCRETION TO:

> A. Deny as moot the opposition motion to the magistrate's denial of motions to recluse Becker Poliakoff and hear the declaratory judgment for rights under an international treaty, or, alternatively, whether the magistrate's orders should be stricken because they were ruled on outright without an R&R format or notice that opposition was allowed, and a dismissal as moot is not a *de novo* review.

The Federal Magistrate Act provides that "[u]pon the consent of the parties, a full-time United States magistrate judge ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U. S. C. § 636(c) SILVERTHORNE understands that the case began with a nonconsensual referral

of pretrial case-dispositive matters under § 636(b)(1), which leave the district court free to do as it sees fit with the magistrate judge's recommendations, but unless a § 636(c)(1) referral authorized by the parties exists, anything the magistrate does has to be issued in a R&R format, and the magistrate must tell the parties they can oppose their ruling, and the district court must make a *de novo* review of them before adopting or rejecting the R&R.

---

3 Marcus, Maeva, edt; *The Documentary History of the Supreme Court of the United States; 1789-1800*.Pub Columbia University Press; 2007

SILVERTHORNE states the obvious: There was no consent in writing. There was

no implied consent. It was clear was annoyed by the flip, condescending tone of

the magistrate, and there was a specific edict in writing that the magistrate only be

allowed to rule on discovery matters signed by all the parties.

> In order for a magistrate judge to oversee any or all
> proceedings in a nonjury civil matter, and to order the entry of
> judgment in the case, 28 U.S.C. § 636(c) requires the "consent
> of the parties." This court has held that "[c]onset must be
> `clear and unambiguous,' and cannot be inferred from the
> conduct of the parties." *Hall v. Sharpe,* 812 F.2d 644, 647
> (11th Cir.1987) (citing *Adams v. Heckler,* 794 F.2d 303, 307
> (7th Cir.1986),

Why were the rulings not issued in an R&R format? They were substantive

issues: the obligations of a country to honor a Treaty, and the desire to have an

attorney recused for good cause. SILVERTHORNE was left to go on dealing

with the attorney for thirteen months. It was not the appropriate scenario,

if she was right about the impropriety of his representation. The Treaty already

had a precedent establishing its applicability and SILVERTHORNE's right to a

private cause of action.

Going on with the obvious, the Appeals Court cannot review the arguments of the

parties on the issue of recusal, or the arguments objecting to the refusal to declare

treaty rights, because they cannot review anything a magistrate does without

48

permission of the parties present to make the magistrate's rulings final, and a court's dismissal as moot is not *de novo* review. *Rembert v. Apfel,* 213 F. 3d 1331 (11th Cir. 2000).

Whether intended or not, the district court left no stone unturned to limit appeal. Had not filed an objection, even in light of the missing obvious clues, no R&R or notice of 14 days to object, she would have automatically lost any right to dicker at the Appeals Court as she does now. The denials need to be remanded for a *de novo* review and an evidentiary hearing on the emails received from Steven Davis.

   B. Deny a non-existent request to amend and not vacate it.

SILVERTHORNE can only argue the bizarre facts of what happened. There is no precedent to address was done. It is, as it is called in legalese, "an issue of first impression," but it is certainly a ruling that was not within the range of the allowable. The district court two-stepped its plaintiff to a dismissal with prejudice with an order that revoke what makes without prejudice mean something: a chance for amendment

The then Plaintiff withdrew a motion to extend the trial track's time to amend, [DE 141, 157 and 159]. The court ruled on it anyway, denied it, and then refused to vacate it when SILVERTHORNE demonstrated there was no motion to amend pending.

49

The court then denied the motion for reconsideration of its adoption of a magistrate ruling to dismiss <u>without prejudice,</u> without citing a date for a new complaint, thereby affecting a dismissal with prejudice in masquerade.

c. Dismiss the collection law statutes against LPR and its Board of Directors with prejudice before discovery.

The circumstances of the collection scenario in this case are singular and convoluted. They were concocted by Defendant LMF as a way to get around Florida Statute 718's governing, long established condominium law that the debt could only be pursued by the association or its representative on its behalf, because only they had the standing to do so.  Then there is the added ingredient of the illegality of the debt collecting structure itself, and whether the debt alleged to be was also alleged to be defaulted.

The Defendants entered into a business relationship predicated on law breaking. Discovery did yield the contract, but too late to incorporate it in the submitted exhibits.  It was not received by the time the second R&R was issued. It never made it to court files because the court stayed the case not too long after it was received. The "badges of fraud" are present in the obtained discovery.

All of these unusual facts were outlined in the SAC. SILVERTHORNE argued to the best of her then novice, legally uneducated ability in her objection motion, using case law and references that were not all decide in the Eleventh Circuit.

50

SILVERTHORNE subscribes to a service which has, since the time she started the suit, sent her updates on federal court decisions nationwide. There is no better case present since the time she first filed her objection response and motion for clarifications [DE 69]. The argument starts on page 13 of docket entry 69.

SILVERTHORNE starts by pointing out the assessment was illegal and the Board expressed agreement in a written email there was a deal in place.  If there is no debt there is no creditor.

She then addressed the fact both the Florida version of its collection law and its federal equivalent define the word creditor in a way that did not suit the circumstances of the business arrangement, or the fact there was the technicality of the false debt [DE 69 pg. 14-15]. SILVERTHORNE cited the case *Bourff v. Rubin Lubin, LLC*, 674 F 3d 1238(11th Cir. 2012).

SILVERTHORNE moves on to address the federal law 15. U.S.C. 1692 j (a), which prohibits a creditor from using someone else's name to collect. A congressional non-case law reference is cited [DE 69 pg.16]. She cannot now remember its relevance, but is sure the Court will recognize it.[4] Her argument was: because there was no debt due another there was no creditor in the courtroom.

---

4 See S. Rep. No 95-382,95thg Cong. Ist Sess. 5(1977), U.S.Code Cong. & Admin News, 1977 pp1695,1699

The fact the Florida version says any person can be a debt collector is pointed out, and SILVERTHORNE cites Fla. Stat § 559.72 (9) saying if a person tries to enforce a false debt or assert a legal right known not to exist they are in violation of the law. SILVERTHORNE ends by addressing the shoring up of her tolling issues: the red light, green light on going collections of the false debt with illegitimate means.

In her Motion for Clarification, after the adoption of the R&R on the SAC, as discussed in the Statement of Facts, she cites Fifth Circuit and New York State district court precedents [DE 72]

The magistrate erred. The court's adoption of her recommendation to dismiss with prejudice erred. It was premature until the clue of the badges of fraud moniker could be explored through discovery. SILVERTHORNE wants them back in the debt collector picture.


## CONCLUSION AND RELIEF SOUGHT

The causes of action, culminating out of the illegal use of a law, a nonexistent debt and onerous collection methods, violated the most basic of our country's protections for the pursuit of life, liberty and happiness, including the taking of property without due process of law.

52

This country was not founded on the principle of the greater good. It was founded on the sanctity of individual rights and freedoms. Condominiums were hard hit by the foreclosure crisis because when one unit foreclosed it raised everyone's maintenance. That was no excuse for what happened. When SILVERTHORNE filed her suit, attorneys scurried to change their web sites and condo talk shows with host attorneys sung a different tune. The onus of the Florida law, bantered around by licensed attorneys, was a powerful deceiver. By the winter of 2016, no one can pursued remedy for this incredible infringement of condominium owners' civil rights. They, nor their local press were aware of the impingement because one needed specialized knowledge to see it. Florida's law firms with condo expertise did not alert the press; they were busy helping their clients circumvent their condominium documents. And the state of Florida did not call them either. They stood down.

SILVERTHORNE asks for: a reversal on the dismissal without prejudice of the TAC for a Rule 8 infraction, and of the dismissal with prejudice of the SAC's collection counts against LPR and its Board of Directors. She wants the denial of the request to hear the declaration of treaty rights reversed. The denial of her motion to recused Becker Poliakoff must be remanded for an evidentiary hearing, and the order denying a no longer existent request to delay amendment in the trial track, which turned a ruling on reconsideration of a motion to dismiss without

53

prejudice, into a motion to dismiss with prejudice, via hocus pocus, must be reversed.

> The Fifth Amendment prohibits the federal government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]his clause ... provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994) *(en banc), cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995)

The Court should give its district court a detention: for the misuse of procedure, including the exceptionally long time frames to rule, and the one sentence opinion must be expounded on. The district court interfered with both the substantive and procedural due process of SILVERTHORNE. The closing of the case for administrative purposes makes SILVERTHORNE incur more costs and extra time; she request the Court to order it reopened.

The case law cited to authorize the appeal says if an appellant elects appeal, they cannot amend. SILVERTHORNE has a different scenario.  The appellant in the cited case got his full review with his counts addressed. SILVERTHORNE did not, and discovery is not complete.  If the Appeals Court mandates no further amendments in this instant case, SILVERTHORNE says it too will be impacting her substantive rights.  If an evaluation of the color of law claim comes back with

54

an edict she must add the State of Florida employees to be viable, she wants to be able to do it. The state of Florida is trending un-American.

All a *pro se* can do is copy. SILVERTHORNE copied a winning attorney in her first SAC, by the book, a shotgun pleading, but the SAC told a clear and compelling story of monumental wrong doing, orchestrated by an attorney.

Respectfully submitted,

Andrea Silverthorne, *Pro Se,*

PO BOX 214, Lubec, Maine, 04652

andthorne@aol.com/ 207-271-6283


## CERTIFICATE OF COMPLIANCE

This is to certify that this brief complies with Federal Rule of Appellate Procedure 32(a) (7).  This brief is submitted in 14-point Times New Roman font, and it contains 13,109 words.

Andrea Silverthorne,

*Pro se*

55

## CERTIFICATE OF SERVICE

I HEREBY confirm a true and correct copy of the Certificate of

Interested Persons and this motion has been sent electronically

previously and  the copy of the brief has been sent by U.S. mail this

25 day of September, 2015 to the following Service List:

Andrea Silverthorne

**SERVICE LIST**

**Steven M. Davis**
Becker & Poliakoff, PA
121 Alhambra Towers
10th Floor
Coral Gables, FL 33134
305-262-4433
Fax: 442-2232
Email: sdavis@becker-poliakoff.com

**Aaron Swimmer**
Swimmer Law Associates
1680 Michigan Avenue
Suite 1014
Miami Beach, FL 33139
305-535-0808
Fax: 305-397-8220
Email: als@SwimmerLawAssociates.com

**Scott Chapman Davis**
Business Law Group, P.A.
320 West Kennedy Blvd
Suite 400
Tampa, FL 33606
(813) 379-3804

Fax: (813) 221-7909
Email: sdavis@blawgroup.com

**Aaron Lee Gordon**
LM Funding, LLC
302 Knights Run Ave
Suite 1000
Tampa, FL 33602
(813) 222-8996
Fax: (813) 253-3820
Email: AGordon@LMFunding.com